UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AKEEM RUSHARD COLEMAN,<br><br>Petitioner,<br><br>v.<br><br>JAMES HILL, Warden,<br><br>Respondent. | Case No. 2:22-cv-01897-FLA-KES<br><br>ORDER TO SHOW CAUSE WHY PETITION SHOULD NOT BE DISMISSED AS UNTIMELY |

On March 14, 2022, Akeem Rushard Coleman ("Petitioner") constructively filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254. ("Petition" at Dkt. 1.)[1]  For reasons discussed more fully below, the Court orders Petitioner to show cause why the Petition should not be summarily dismissed as untimely.

---

[1] Petitioner signed the Petition on March 14, 2022.  (Dkt. 1 at 6.)  For purposes of this order, the Court assumes, that Petitioner is entitled to the benefit of the prison mailbox rule, under which "a prisoner's pro se habeas petition is deemed filed when he hands it over to prison authorities for mailing . . . ." Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010) (citation omitted); see also Butler v. Long, 752 F.3d 1177, 1178 n.1 (9th Cir. 2014) (noting that, in the absence of other evidence, courts generally deem a habeas petition filed on the day it was signed).

1

# I.

# BACKGROUND

The following facts are taken from the Petition, the Court's own records, or public court records. Where necessary, the Court takes judicial notice of the latter. See Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980) ("[A] court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases.").

Petitioner declares that on July 25, 2006, at age sixteen, he rode in a car with two other men (shown in other court records to be James Robert Keys and Steven Paul Jones) to a residential location that Keys and Jones had targeted for a home invasion robbery. Keys and Jones were "of greater stature" than Petitioner. Petitioner stayed in the car while Keys and Jones broke in. Petitioner saw one of his co-defendants gesture to him, summoning him to the door of the residence. Petitioner went and stood outside the door without entering because he was instructed to act as a lookout. He stayed at the doorway "visible and known to be present . . . only to my co-defendants" and not the two victims. (Dkt. 1 at 24.)

Petitioner was arrested in connection with these events in October 2006. When interrogated by the police, he told them the same version of events as set forth in his declaration, but they "warped" his statements and "twisted out a warped confession." (Id. at 13, 24.) Petitioner was charged in Los Angeles County Superior Court ("LASC") case no. BA306578-02 with two counts of violating California Penal Code ("PC") sections 264.1 (aiding and abetting rape), 211 (robbery), and 459 (burglary), and one count of violating PC section 288a(C)(2)[2]

---

[2] PC section 288a has been renumbered to PC section 287. See 2018 Cal. Legis. Serv. Ch. 423 (S.B.1494), § 49, eff. Jan. 1, 2019. !

(forcible oral copulation).  Petitioner was charged as defendant #2 along with co-defendants Keys and Jones.  See https://www.lacourt.org/criminalcasesummary/ui/ (search "BA306578" and select hyperlink for Petitioner's criminal case).

Keys and Jones went to trial.  Trial testimony, as summarized by the California Court of Appeal, described a home invasion robbery at the apartment of two women who were beaten, choked, raped, robbed, and threated.  People v. Jones, No. B226682, 2012 WL 284579, at *1-5 (Cal. Ct. App. Feb. 1, 2012).  The California Court of Appeal described evidence identifying the three perpetrators as follows:

> On July 25, 2006, two roommates, T. G. and Paula L., lived in an apartment in Hollywood.  They were victims of a home invasion robbery and sexual assaults.  They identified three perpetrators of the crimes.  Each woman used a different method to distinguish among the men who entered the apartment.  T. referred to the men as the "first" man/suspect, the "second" man/suspect and the "third" man/suspect.  She further explained the third man/suspect was "skinny."  Paula distinguished the men by size: the large man, the medium man, and the skinny/smaller man.
>
> T. testified all sexual assaults were committed by the "first" man.  Paula testified the sexual assaults were committed by the medium-sized man.  Jones's sperm and DNA were located throughout the residence. . . .  Jones was the person who committed the sexual assaults and was the person referred to as the first man/suspect by T. and the medium-sized man by Paula.  Similarly, because neither Keys nor Jones was the smaller "skinny" intruder and because another male was identified as the smaller assailant, the record supports the conclusion that Keys was the second man/suspect or the large assailant.

Id. at *2.

The evidence concerning the third, smaller intruder included testimony that he entered the women's apartment and handed a gun to Keys that Keys used to threaten the women. He also accompanied Keys into Paula's bedroom to look for valuables. Id. at *3. After T. screamed out a window for help, Jones choked her until the other two men told him to stop. Id. All three perpetrators stayed in the apartment until Paula and T. were tied with cords. When they left together, T. watched through a window and saw them get into the same dark red car. Id. at *3-4. Keys was arrested later that day in possession of the victims' cell phones and other stolen property. Jones wrote a letter found in his jail cell stating that he, "Ping" (Keys), and "Slick" had robbed some women's home. Id. at *4.

After a jury convicted Keys and Jones of crimes related to robbery and sexual assault, Keys was sentenced to "a determinate term of 3 years in state prison plus two consecutive indeterminate terms of 25 years to life." Jones was sentenced to "a determinate term of 76 years, 4 months in state prison" plus consecutive indeterminate terms as follows: "two life terms with the possibility of parole; three terms of 25 years to life; and one term of 15 years to life." Id. at *1.

Petitioner chose to enter a "nolo contendere" plea in July 2010 to three charges: two counts of robbery and one count of forced oral copulation. (Dkt. 1 at 2.) Per LASC records, the State dismissed the other charges against Petitioner. He was sentenced to thirty-six years in prison. (Id.) He did not appeal. (Id. at 5.)

## II.

## CLAIMS FOR RELIF

Petitioner seeks federal habeas relief on two grounds: (1) ineffective assistance of counsel ("IAC") and (2) insufficiency of the evidence to support a conviction. (Id. at 3-4.) Petitioner contends that counsel's deficit performance "doomed" any possibility for an acquittal at trial, forcing him to plead guilty. (Id.) He believes that his conviction for "crimes far in excess of errant juvenile

delinquency is outrageous." (Id. at 21.)

"[C]laims of pre-plea ineffective assistance of counsel are cognizable on federal habeas review when the action, or inaction, of counsel prevents petitioner from making an informed choice whether to plead." Mahrt v. Beard, 849 F.3d 1164, 1170 (9th Cir. 2017) (allowing IAC claim based on counsel's failure to file a motion to suppress). As the factual basis for his IAC claim, Petitioner alleges that counsel failed to (1) advise him of the adverse effects of waiving his speedy trial rights as a juvenile; (2) advise him of the availability of a juvenile life sentence[3]; (3) move to suppress his coerced statements; (4) obtain discovery beyond the prosecutor's file; (5) provide any "defense strategy or theory;" (6) interview exculpatory witnesses or investigate; (7) "present any adversarial testing of the prosecutor's case"; and (8) advocate for Petitioner, because he was prejudiced against him due to Petitioner's gang membership and juvenile criminal record. (Dkt. 1 at 3.)

Regarding his second claim, the Due Process Clause of the Fourteenth Amendment protects a criminal defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence introduced at trial was insufficient to support the jury's findings states a cognizable federal habeas claim. Herrera v. Collins, 506 U.S. 390, 401-02 (1993). Here, Petitioner argues that the victims could not identify

---

[3] Petitioner contends that he should have gone to trial as a juvenile because the worst sentence he could have received was a juvenile life sentence and he would have been eligible for parole at age 25. (Dkt. 1 at 20.) Petitioner appears to be relying on law following Graham v. Florida, 560 U.S. 48 (2010) (holding that the Eighth Amendment prohibits the sentence of life without parole for a juvenile offender who did not commit homicide). In response to Graham, the California Legislature provided for "youth offender parole hearing for eligible persons after they have been incarcerated for 15, 20, or 25 years, depending upon the term of the offender's controlling offense." In re Woods, 62 Cal. App. 5th 740, 750 (2021).

5

him as the third perpetrator and there was no DNA evidence placing him at the scene. (Dkt. 1 at 4.) Petitioner, however, was convicted based on his plea, not a jury verdict. Petitioner, therefore, cannot bring this kind of due process claim. See Tollett v. Henderson, 411 U.S. 258, 266-67 (1973) ("he pleaded guilty to the offense and therefore cannot claim that the prosecution's evidence was insufficient"); Martin v. Dexter, No. EDCV 08-00693-DOC (MLG), 2008 WL 4381519, at *7 (C.D. Cal. Sept. 23, 2008) ("By pleading guilty . . . Petitioner effectively waived any claim that his constitutional rights were violated as to pretrial matters, which includes a challenge to the sufficiency of the evidence." (citing Tollett)).

## III.

## STATUTE OF LIMITATIONS DISCUSSION

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires the district court to dismiss a habeas petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . . ." Under this rule, district courts may "consider, sua sponte, the timeliness of a state prisoner's habeas petition." Day v. McDonough, 547 U.S. 198, 202 (2006). "[B]efore acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions." Id.

**A.     One-Year Statute of Limitations.**

    **1.     Legal Standard.**

This action is subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides as follows:

> (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
> 
>     (A)  the date on which the judgment became final by the

|   |   |
|---|---|
| 1 | conclusion of direct review or the expiration of the time for |
| 2 | seeking such review; |
| 3 | (B) the date on which the impediment to filing an application |
| 4 | created by State action in violation of the Constitution or laws |
| 5 | of the United States is removed, if the applicant was prevented |
| 6 | from filing by such State action; |
| 7 | (C) the date on which the constitutional right asserted was |
| 8 | initially recognized by the Supreme Court, if the right has been |
| 9 | newly recognized by the Supreme Court and made retroactively |
| 10 | applicable to cases on collateral review; or |
| 11 | (D) the date on which the factual predicate of the claim or |
| 12 | claims presented could have been discovered through the |
| 13 | exercise of due diligence. |

28 U.S.C. § 2244(d).

Thus, AEDPA "establishes a 1-year time limitation for a state prisoner to file a federal habeas corpus petition." Jimenez v. Quarterman, 555 U.S. 113, 114 (2009). The statute of limitations period usually runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). In rare instances, however, one of the alternative starting dates described in § 2244(d)(1) subsections (B), (C), or (D) will apply.

**2. Analysis.**

Petitioner's Abstract of Judgement was entered on August 2, 2010. (Dkt. 1 at 30.) He did not appeal, so his judgment of conviction became final sixty days later on October 1, 2010. See Cal. Rules of Court, Rule 8.308; Mendoza v. Carey, 449 F.3d 1065, 1067 (9th Cir. 2006). Thus, if 28 U.S.C. § 2244(d)(1)(A) applies, then Petitioner's ADEPA filing deadline expired in October 2011.

Petitioner argues that his Petition is timely under § 2244(d)(1)(D). He states,

"Prior to recent due diligence discoveries as a Petitioner with no legal training and no post-state conviction counsel, my claims were not known to me to exist as resorts to motion in court." (Dkt. 1 at 5.) He also states that "the factual predicates to all claims herein were not discovered through the exercise of further due diligence until November 30th, 2021." (Id. at 12.) They were discovered "with the aid of some prisoner-to-prisoner legal assistance . . . ." (Id. at 21-22.)

Section 2244(d)(1)(D) does not delay the running of AEDPA's limitations period until a petitioner obtains legal assistance and realizes that he might have legal grounds for relief. Rather, the "due diligence clock starts ticking when a person knows or through diligence could discover the vital facts, ***regardless of when their legal significance is actually discovered.***" Ford v. Gonzalez, 683 F.3d 1230, 1235 (9th Cir. 2012), cert. denied, 568 U.S. 1053 (2012) (emphasis added).

All of the facts Plaintiff identifies as the basis of his IAC claim are facts that he knew during his criminal proceedings. He knew that counsel had not filed a motion to suppress his statements to the police. He knew that counsel had waived his speedy trial rights and he did not go to trial before turning eighteen. He knew that counsel had not given him copies of discovery reflecting witness interviews or other investigation. (Dkt. 1 at 20.) Petitioner's own allegations admit that he "discovered" he could assert an IAC claim by getting legal assistance, not by learning new facts about how counsel performed. (Id. at 12, 21-22.) His allegations are insufficient to delay the running of AEDPA's limitations period under § 2244(d)(1)(D).

**B.** **Statutory Tolling.**

  **1.** **Legal Analysis.**

AEDPA provides for statutory tolling, as follows: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). The

United States Supreme Court has interpreted this language to mean that AEDPA's statute of limitations is tolled from the time the first state habeas petition is filed until the California Supreme Court rejects a petitioner's final collateral challenge, so long as the petitioner has not unreasonably delayed during the gaps between sequential filings. Carey v. Saffold, 536 U.S. 214, 219-21 (2002) (holding that, for purposes of statutory tolling, a California petitioner's application for collateral review remains pending during the intervals between the time a lower state court denies the application and the time the petitioner files a further petition in a higher state court). However, statutory tolling "does not permit the reinitiation of a limitations period that has ended before the state petition was filed," even if the state petition was timely filed. Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003), cert. denied, 540 U.S. 924 (2003).

The burden of demonstrating that AEDPA's one-year limitation period was sufficiently tolled, whether statutorily or equitably, rests with the petitioner. See, e.g., Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Banjo v. Ayers, 614 F.3d 964, 967 (9th Cir. 2010); Gaston v. Palmer, 417 F.3d 1030, 1034 (9th Cir. 2005) (as amended); Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002), cert. denied, 537 U.S. 1003 (2002).

**2.   Analysis.**

Plaintiff did not file any earlier state habeas petitions. (Dkt. 1 at 5.) He alleges that he does not have any state habeas petitions pending. (Id. at 6.) Online records, however, show that on March 18, 2022, Petitioner filed a habeas petition with the California Supreme Court, case no. S273674, which is currently pending. Petitioner's filing in this Court acknowledges that review by the California Supreme Court "is necessary to exhaust state judicial remedies." (Dkt. 1 at 1, 6.)

It appears that Petitioner may have filed the same Petition in the California Supreme Court and the United States District Court for the Central District of California at roughly the same time in an attempt to exhaust his claims. If this is

what happened, then the petition pending in the California Supreme Court was filed after Petitioner's AEDPA filing date expired and it cannot create statutory tolling.

C. **Equitable Tolling.**

    1. **Legal Standard.**

AEDPA's one-year limitation period is subject to equitable tolling if the petitioner shows: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace, 544 U.S. at 418). The petitioner "must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." Smith v. Davis, 953 F.3d 582, 598-99 (9th Cir. 2020) (en banc) (rejecting a "stop-clock approach" to equitable tolling). In other words, "it is not enough for a petitioner seeking an exercise of equitable tolling to attempt diligently to remedy his extraordinary circumstances; when free from the extraordinary circumstance, he must also be diligent in actively pursuing his rights." Id. at 599.

"The diligence required for equitable tolling purposes is reasonable diligence, . . . not maximum feasible diligence," Holland, 560 U.S. at 653 (internal quotation marks and citations omitted), and courts consider "the petitioner's overall level of care and caution in light of his or her particular circumstances," Doe v. Busby, 661 F.3d 1001, 1013 (9th Cir. 2011). See also Smith, 953 F.3d at 600-01 (emphasizing that the doctrine "does not impose a rigid 'impossibility' standard on litigants, especially not on 'pro se prisoner litigants – who have already faced an unusual obstacle beyond their control during the AEDPA limitation period,'" but noting that it usually "requires the petitioner to work on his petition with some regularity – as permitted by his circumstances – until he files it in the district court") (citation omitted).

"[T]he threshold necessary to trigger equitable tolling [under AEDPA] is

very high, lest the exceptions swallow the rule." Miranda, 292 F.3d at 1066. Consequently, equitable tolling will be justified in few cases. Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003). "To apply the doctrine in 'extraordinary circumstances' necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances 'stood in his way' suggests that an external force must cause the untimeliness, rather than, as we have said, merely 'oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude the application of equitable tolling.'" Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir. 2009).

The burden of demonstrating that AEDPA's one-year limitation period was sufficiently tolled, whether statutorily or equitably, rests with the petitioner. See Pace, 544 U.S. at 418.

### 2. Analysis.

Plaintiff may argue that lack of post-conviction counsel, which caused him not to realize until November 2021 that facts he had known since 2010 might support an IAC claim, is a basis for equitable tolling. But "pro se status, on its own, is not enough to warrant equitable tolling." Roy v. Lampert, 465 F.3d 964, 970 (9th Cir. 2006).

Plaintiff may also argue that his young age at the time of his arrest is a basis for equitable tolling. Plaintiff, however, was not convicted until he was an adult, so no portion of his AEDPA limitations period ran while he was a minor.

### D. Actual Innocence.

#### 1. Legal Standard.

Under Schlup v. Delo, 513 U.S. 298 (1995), "a credible claim of actual innocence constitutes an equitable exception to AEDPA's limitations period, and a petitioner who makes such a showing may pass through the Schlup gateway and have his otherwise time-barred claims heard on the merits." Lee v. Lampert, 653 F.3d 929, 932 (9th Cir. 2011). The Schlup equitable exception is different than the

delayed-start-date provision for new evidence in § 2244(d)(1)(D), discussed above. Section "2244(d)(1)(D) is both modestly more stringent (because it requires diligence) and dramatically less stringent (because it requires no showing of innocence)." McQuiggin v. Perkins, 569 U.S. 383, 396 (2013).

However, "[i]n order to present otherwise time-barred claims to a federal habeas court under Schlup, a petitioner must produce sufficient proof of his actual innocence to bring him within the narrow class of cases . . . implicating a fundamental miscarriage of justice." Lee, 653 F.3d at 937 (internal quotation marks and citations omitted). While a petitioner is not required to proffer evidence creating an "absolute certainty" about his innocence, the Schlup gateway is an "exacting standard" that permits review only in the "extraordinary case." Id. at 938; see also House v. Bell, 547 U.S. 518, 538 (2006) ("[I]t bears repeating that the Schlup standard is demanding and permits review only in the 'extraordinary' case.").

Specifically, a petitioner must show "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Lee, 653 F.3d at 938 (quoting Schlup, 513 U.S. at 327). The petitioner must support his allegations "with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Lee, 653 F.3d at 938 (quoting Schlup, 513 U.S. at 324). "[U]njustifiable delay on a habeas petitioner's part," while not "an absolute barrier to relief," is "a factor in determining whether actual innocence has been reliably shown." McQuiggin, 569 U.S. at 387.

**2. Analysis.**

Petitioner does not raise an actual innocence claim. He "admittedly was in a place he had no authorization to enter without consent of the property owner," referring to Paula and T.'s apartment. (Dkt. 1 at 21.) He admits that he acted as a

lookout while Keys and Jones attacked Paula and T.[4]  (Id. at 24.)

## IV.
## CONCLUSION

IT IS THEREFORE ORDERED that, **on or before April 28, 2022**, Petitioner show cause in writing, if any he has, why the Court should not recommend that this action be dismissed with prejudice on the ground of untimeliness.

DATED: March 28, 2022

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

---

[4] When Keys sought habeas relief in this court in 2013, he claimed that he drove the other two men to the scene, waited in the car, checked on his co-defendants after 20 minutes, and was "sickened" to discover "his co-defendants raping the girls." See Keys v. Foulk, Central District of California, No. 2:13-cv-04298-GW-DFM (C.D. Cal. filed June 14, 2013), Dkt. 1 at 6.  He repeatedly blamed Jones and Petitioner for attacking Paula and T.  Id.  Nothing in the instant Petition discusses what evidence Keys and/or Jones might have provided against Petitioner, true or false.

13